

DEFENDANT'S EXHIBIT A

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,             )<br>                                                              )<br>            Plaintiff,            )<br>                                                              )<br>      v.                                                   )    Case No. 4:98-cr-0006-MTS<br>                                                              )<br>MICHAEL ANDRUS,                       )<br>                                                              )<br>            Defendant.            ) | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff the United States of America's (the "Government") Application for Order Permitting Liquidation of Funds Pursuant to Writ of Execution ("Application"), Doc. [290], against Defendant Michael Andrus. For reasons discussed herein, the Court denies the Government's Application.

This case concerns the restitutionary liability of Defendant. Over twenty-years ago, Defendant pled guilty to crimes, and he was ordered to pay restitution. Around that same time, the Government obtained a writ of execution for one of Defendant's financial accounts in order to satisfy Defendant's restitution debt. While a writ of execution was issued and properly served upon the account, the account was never liquidated. Inadvertently, the Government did not realize this blunder for almost twenty years. Only until recently did the Government realize the account had never been liquidated in accordance with the writ, and soon thereafter, it filed the current Application before the Court seeking liquidation of the funds in the account. Defendant argues his liability to pay restitution expired; the Government argues Defendant remains liable for restitution from the funds in the account. The Court holds that Defendant's restitution obligation expired and the Government cannot seek liquidation of the funds from Defendant's account.

I.     **BACKGROUND**

On May 12, 1998, Defendant pled guilty to three counts of Interstate Transportation of Stolen Money, in violation of 18 U.S.C. § 3413.  Doc. [44].  The offenses occurred on September 1, 1997, August 26, 1994, and August 22, 1996.  Doc. [103] at 1.  On January 29, 1999, the United States District Court for the Eastern District of Missouri entered a criminal judgment against Defendant.  *Id.*  Defendant was sentenced to 31 months' imprisonment and a term of 36 months of supervised release.  *Id.* at 2–4.  As a special condition of supervised release, the Court ordered Defendant to pay $1,500,000.00[1] in restitution to Duke Manufacturing Services ("Duke"), pursuant to both the Victim and Witness Protection Act of 1982 and the Mandatory Victims Restitution Act of 1996.  *Id.* at 4–6.

On or about May 25, 2001, Defendant was released from prison and began his term of supervised release.  On January 31, 2003, the Government filed an application for writ of execution pursuant to the Federal Debt Collection Procedures Act and the Mandatory Victims Restitution Act of 1996.  Doc. [224].  On February 6, 2003, the Court issued a writ of execution pursuant to 28 U.S.C. § 3203 directing the United States Marshal's Service (the "USMS") to satisfy the outstanding restitution judgment by levying upon Defendant's accounts held in his name by Fidelity Investments ("Fidelity").  Doc. [224].  In March 2003, the writ of execution was served upon Fidelity, Docs. [231], [233], but the funds were never liquidated or turned over to the Clerk of Court for payment of restitution.[2]  The USMS filed their returns on March 11 and 14, 2003. Docs. [231], [233].

---

[1] Later, the restitution was ordered to be owed jointly and severally with Stephen Tormey, a co-defendant.

[2] In other words, there was no "levy."  The levy of the property—which occurs when the USMS physically takes possession of the property—never occurred.

On June 17, 2003, the U.S. Probation Office filed a petition for summons against Defendant alleging he violated terms of his supervised release.[3]  Doc. [279] at 9–11.  On October 30, 2003, the Government and Defendant signed a written agreement recommending that Defendant's supervised release be revoked, that Defendant serve six months in home confinement with electronic monitoring, and after that, he serve six months supervised release "[i]n exchange for Defendant's voluntary admissions that he has violated the terms of his supervised release . . . and his agreement not to contest the United States' collection of his Fidelity Investment accounts under the Court's February 6, 2003, Writ of Execution."  *Id.* at 2–4.  On November 12, 2003, the Court entered a judgment, in accordance with the parties' agreement.  Doc. [280].  The judgment ordered Defendant to serve one year supervised release (with six months being in home confinement) and to pay restitution in the amount of $717,582.34 in monthly installments of $600.00 over 1,196 months.  *Id.* at 3–6.

For well over a decade, Defendant made his monthly payments toward restitution to the Clerk of Court.  In September 2021, Defendant mailed his monthly money order, but the Clerk returned the money to Defendant because the "debt [h]a[d] been written off as expired."  Doc. [299-1].  Less than a month later, Defendant wrote to Fidelity requesting that the "stop or block" on his account be lifted because his remaining debt had been written off by the Court.  Fidelity then contacted Duke due to Duke's claim on those funds.  Doc. [302] at 4.  Indeed, Fidelity has kept Defendant's accounts frozen since 2003.

In 2022, the Government contends that it learned of and now "takes responsibility for the mistake in the debt tracking system" that mistakenly notified Defendant that his restitutionary debt had been terminated.  Doc. [311] at 5; *see also* Doc. [308] at 10–11.  Shortly thereafter, the

---

[3] Defendant was accused of several violations of his supervised release, some of which could have carried an additional prison sentence.

3

Government filed the Application at issue here to permit liquidation of funds held at Fidelity. Doc. [290]. The Government's Application requests the Court to enter an order directing Fidelity Investments to liquidate the accounts pursuant to the February 2003 writ of execution. *Id.* Defendant opposed the Motion. Doc. [299]. On August 24, 2022, the Court heard argument on this matter. Doc. [304]. The Court allowed the parties to brief the issues further. Docs. [311], [312], [315], [316].

## II. DISCUSSION

Both the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3363 (1994), and the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A (1996), are implicated in this case. Thus, some statutory background is necessary.

The statute that governed criminal restitution prior to the MVRA was the VWPA, which was enacted in 1982. "Under the VWPA, when a criminal judgment imposed a restitution order, it created a lien by operation of law and started a twenty-year clock running, and when that clock ran out, two things happened: the lien became unenforceable and the defendant's liability to pay expired." *United States v. Norwood*, 49 F.4th 189, 1 (3d Cir. 2022) (citing to 18 U.S.C. § 3663 (1994) and 18 U.S.C. § 3613 (1994)). Over a decade later, in April 1996, Congress enacted the MVRA, which amended the law governing restitution for criminal defendants in several respects. Notably, the MVRA required *mandatory* restitution to victims of certain crimes.[4] 18 U.S.C. § 3663A(a)(1). Also, the MVRA, unlike the VWPA, treated restitution liens pursuant to Section 3613 like tax liens arising under Title 26. 18 U.S.C. § 3613(c); *United States v. Kidd*, 23 F.4th 781, n.2 (8th Cir. 2022) (explaining a restitution order governed by the MVRA is treated "as if it were a tax liability assessed under the Internal Revenue Code") (citing 18 U.S.C. § 3613(c));

---

[4] This requirement included offenses against property under Title 18 and any offense committed by fraud or deceit. 18 U.S.C. § 3663A(a)(1).

4

*United States v. Yielding*, 657 F.3d 722, n.3 (8th Cir. 2011) (explaining under the MVRA "[a]n order of restitution . . . is valid and enforceable in a manner similar to a tax lien") (citing 18 U.S.C. § 3613(c)–(d)).[5]  Another notable difference is that "under the MVRA, a restitution lien *never becomes unenforceable*, and a defendant's liability to pay expires not twenty years after entry of the defendant's judgment, but twenty years after the defendant's release from imprisonment, resulting in a significantly longer period of liability than under the VWPA."[6]  *Norwood*, 49 F.4th at 197 (citing to 18 U.S.C. § 3663A (1996) and 18 U.S.C. § 3613 (1996) (emphasis added)).

    A.  **<u>Defendant's Restitution Liability Is Subject to Both the VWPA and MVRA</u>**.

The Government argues that only the MVRA applies to Defendant's restitution liability. The MVRA took effect on April 24, 1996.  Two years later, Defendant pled guilty to three counts of interstate transportation of stolen money, Doc. [44], which offenses occurred in August 1994 (Count II), August 1996 (Count III), and September 1997 (Count I).  Doc. [103] at 1.  There is no dispute Counts I and III are governed by the MVRA.  However, Defendant committed the offense in Count II *prior to* enactment of MVRA (in 1994) but was sentenced *after* enactment of the MVRA (in 1999).[7]  The plain language of the Plea Agreement and the 1999 Judgment show that

---

[5] Further, the MVRA allowed the Government to "enforce a judgment imposing [restitution] in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a); *see also United States v. Cohan*, 798 F.3d 84, 89 (2d Cir. 2015) (the United States "may enforce restitution orders arising from criminal convictions using the practices and procedures for the enforcement of a civil judgment under federal or state law as set forth in the Federal Debt Collection Procedures Act"); *accord United States v. Yielding*, 657 F.3d 722, 726-27 (8th Cir. 2011) (noting the FDCPA "is the primary—but not the exclusive—procedure for collecting a restitution debt to the United States").

[6] As explained in this Memorandum and Order, in the MVRA, Congress extended the period in which criminal defendants remain liable to pay restitution.  Before the MVRA, the VWPA provided that an order of restitution became unenforceable "twenty years after the entry of the judgment" or when the defendant died.  18 U.S.C. § 3613(b) (1994).

[7] The Court notes a circuit split regarding which statute applies when the VWPA was in effect at the time of the commission of the offense, but the MVRA was in effect at the time of sentencing.  The majority of circuits have held that retroactive application of the MVRA to conduct occurring *before* its enactment would violate the Ex Post Facto Clause.  The Court need not opine on this issue, however, because the relevant agreements and judgments in this case expressly state the VWPA applies to offenses that occurred *prior* to the enactment of the MVRA, as discussed in this Memorandum and Order.  Further, the Court reaches the same conclusion under both the MVRA and VWPA.

restitution liability for Count II is governed by the VWPA.

In 1998, Defendant pled guilty to three counts of interstate transportation of stolen money. In the Plea Agreement, the Government expressly noted that *both* the VWPA and MVRA applied in this case.[8] Doc. [46] at 3 ("The Government states that the [VWPA] does apply in this case."). The Plea Agreement even explains that "mandatory" restitution will be ordered for "all events that occurred *after* April 24, 1996"—the day the MVRA took effect. *Id.* (emphasis added). But "[r]estitution *before* that date may be ordered at the time of sentencing in the Court's *discretion*." *Id.* (emphasis added). Similarly, at sentencing, the Court ordered $1,500,000 in restitution for "Counts One–Three," pursuant to *both* the VWPA and MVRA. Doc. [103] at 5–6. Thus, it is implicit that Defendant's restitution liability for Count II is governed by the VWPA—especially as it is the *only* count to which the VWPA could apply—and Defendant's restitution liability for Counts I and III are governed by the MVRA.

B. **Restitution under the MVRA**.

As the Court discussed directly above, Defendant's obligation to pay restitution for Counts I and III are governed by the MVRA. As a reminder, restitution ordered pursuant to the MVRA may be enforced like tax liens, never becomes unenforceable, and liability to pay expires twenty years after the later date between entry of the defendant's judgment or the defendant's release from imprisonment. *See* 18 U.S.C. § 3663A (1996); 18 U.S.C. § 3613 (1996). As discussed below, the Court finds that Defendant's liability to pay restitution for Counts I and III has expired and the Government cannot avail itself of the tax code to extend the period in which it can collect the unpaid balance of restitution from Defendant's Fidelity account.

---

[8] The Plea Agreement further distinguishes between payments of the *mandatory* restitution (MVRA) and the *discretionary* restitution (VWPA). *See* Doc. [46] at 8 ("The parties agree that any restitution paid . . . will be initially applied to the mandatory restitution and remainder to discretionary restitution in the event it is ordered by the Court.").

1. ***Expiration of Liability Under MVRA***

The parties first dispute whether Defendant's liability to pay restitution expired under the MVRA. Under the MVRA, restitution orders are to be enforced like fines by creating a lien in favor of the Government. 18 U.S.C. § 3613(c) (1996).[9] The "lien arises on the entry of judgment" and then "continues for 20 years or until the liability is satisfied, remitted, set aside, or is *terminated* under subsection (b)." *Id.* (emphasis added). Subsection (b) of Section 3613 states that the "liability" to pay "shall *terminate* the *later* of 20 years from the entry of judgment *or* 20 years after the release from imprisonment of the person fined, or upon the death of the individual fined."[10] *Id.* § 3613(b) (emphasis added).

Defendant argues his release from incarceration occurred on May 25, 2001, a date later than the entry of judgment in 1999. Thus, according to Defendant, his restitution liability expired twenty years after release from incarceration, on May 25, 2021. On the other hand, the Government argues that the relevant "judgment" that triggers the twenty-year period is the judgment entered in 2003. If so, Defendant's liability extends until 2023.

The parties dispute which "judgment" counts for purposes of Section 3613. The Government argues that the twenty-year liability period resets any time a restitution order is amended or re-entered. Other courts in the United States Court of Appeals have expressly rejected the Government's interpretation. *See Norwood*,[11] 49 F.4th at 200–10 (interpreting the twenty-year

---

[9] Also, Section 3663A(d) of the MVRA provides that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664," 18 U.S.C. § 3663A(d), and Section 3664, in turn, points to "subchapter B of chapter 229 of this title," *id.* § 3664(m)(1)(A)(i), meaning the amended version of Section 3613. *See also United States v. Norwood*, 49 F.4th 189, n.1 (3d Cir. 2022).

[10] The Court notes in 2018 Subsection (b) of Section 3613 was amended to specifically state "liability to pay *restitution* shall terminate . . .", 18 U.S.C. § 3613(b) (2018), purportedly to obliviate any confusion of referring to "restitution" as synonymous with "fines," as in previous versions of Section 3613. *See id.* § 3613(b)–(c), (f) (1996).

[11] The procedural posture in *Norwood* is even more pronounced than the situation here because there, the defendant was actually resentenced in 2013, which resulted in a new restitution order. *Norwood*, 49 F.4th at 207–10.

"judgment" text in § 3613 under the VWPA, which has "judgment" language identical to § 3613 under the MVRA); *cf. United States v. Delano*, 981 F.3d 1136 (10th Cir. 2020) (concluding that the original judgment for restitution in 1993 controlled over a subsequent 2017 order of restitution that revoked supervised release). The Court agrees[12] and finds that the relevant "judgment" for purposes of Section 3613 is the criminal judgment entered on January 29, 1999.[13] *Norwood*, 49 F.4th at 207–10 (holding "the original 1997 judgment that established the basis of [the defendant's] restitutionary liability" is the "entry of judgment" contemplated by Section 3613 and it is "immaterial" whether defendant's 2013 resentencing resulted in a new restitution order because it "is his lien, not his restitution order, that the Government seeks to enforce"); *Delano*, 981 F.3d at n.3 (10th Cir. 2020) ("[A] violation of the conditions of supervised release does not constitute a new crime, and the revocation of supervised release is not properly considered a new punishment." (quoting *United States v. Pettus*, 303 F.3d 480, 487 (2d Cir. 2002)).

Thus, according to the plain text of Section 3613, the Court concludes that the twenty-year limitations period dates back to January 29, 1999, and did not restart on November 12, 2003. But, because Defendant's release from incarceration occurred on May 25, 2001, a date *later* than the entry of judgment in 1999, Defendant's restitution liability governed by the MVRA (Counts I and III) expired on May 25, 2021, the later date of the judgment and release from incarceration.

---

[12] Most notably, the Writ of Execution the Government now seeks to enforce specifically states that the "judgment" is the judgment from "January 29, 1999." *See* Doc. [224]. Meaning, the Government obtained the 2003 Writ of Execution based on the 1999 Judgment. Also, the Writ of Execution the Government now seeks to enforce was issued over six months *before* the 2003 Judgment. Thus, the judgment that created the lien—here, Defendant's original 1999 judgment—is the same one from which the twenty-year liability period runs.

[13] As further proof that the 1999 Judgment is controlling, the Court notes an Order dated August 15, 2005, where the Court needed to "clarify the order of restitution *previously entered* as *part of the Judgment in a Criminal Case on January 29, 1999*" to reflect that Defendant is "jointly and severally liable . . . for the *restitution ordered in the judgment dated January 29, 1999*." Doc. [283] (emphasis added). Language in the 2003 agreement is also instructive. *See, e.g.*, Doc. [279] at 3 ("nothing contained in this document is meant to limit the rights and authority of the United States of America to collect the restitution *previously ordered by the Court*." (emphasis added)).

### 2. *Extension of Government's Ability to Collect Under MVRA*

The Court's inquiry is not yet over, notwithstanding the Court's conclusion that Defendant's restitution liability expired in May 2021 under Section 3613. The Court next considers whether the Government may enforce an expired restitution order by commencing a collection action before the liability period ends. Specifically, the Government points to Section 6502(a) of the federal tax code and argues that the 2003 Writ of Execution extended the Government's ability to collect restitution from the Fidelity account beyond the date Defendant's obligation to pay restitution ended. The Court finds that while Section 6502(a) could extend the Government's ability to collect restitution ordered under the MVRA beyond the date of expiration, the 2003 Writ of Execution is insufficient to invoke that statute.

The MVRA's version of Section 3613 in effect at the time provides that restitution shall be treated "as if the liability of the person fined were a liability for tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c); *United States v. De Cespedes*, 603 F. App'x 769, 771 (11th Cir. 2015) (explaining a restitution lien has the "same effect as a federal tax lien" (citing 18 U.S.C. §§ 3613(d)–(f))). Under the relevant portion of the tax code, "[i]f a *timely proceeding in court* for the collection of a tax is commenced, the period during which such tax may be collected by levy *shall be extended* and shall not expire until the liability for the tax . . . is satisfied or becomes unenforceable."[14] 26 U.S.C. § 6502(a) (emphasis added). Thus, under Section 6502(a), the Government's ability to collect restitution beyond Section 3613's twenty-year limitation period is extended if the Government filed a collection proceeding *before* the date a defendant's restitutionary liability expires. *Id.*; *see also Norwood*, 49 F.4th at 212 ("The MVRA amended § 3613 to provide for additional enforcement mechanisms, including § 6502(a)"); *see,*

---

[14] As discussed in this Memorandum and Order, this mechanism is not available to restitution governed by the VWPA.

9

*e.g.*, *United States v. Pegg*, 16-60289-CIV, 2016 WL 5234616, at *2 (S.D. Fla. Sept. 22, 2016) (applying Section 6502(a) to extend the twenty-year limitations period of the MVRA).

Now that the Court has concluded Section 6502(a) allows the Government to collect restitution ordered under the MVRA beyond the twenty-year period, the next question is whether the Government availed itself of that statute. The Government argues the 2003 Writ of Execution[15] is a timely collection proceeding as contemplated by Section 6502(a). This necessarily begs the question of what constitutes "a proceeding in court" within the meaning of the internal revenue code. The Court does not agree that a writ of execution is equivalent to the commencement of "a proceeding in court" to collect taxes within the meaning of Section 6502(a).

What constitutes "a proceeding in court" presents a "question of federal law" and "is an issue that has been before a number of courts, state as well as federal, with conflicting result."[16] *United States v. Silverman*, 621 F.2d 961, 964 (9th Cir. 1980). In light of this, the Court requested additional briefing from the parties on whether the 2003 Writ of Execution was a timely "proceeding" as contemplated by Section 6502(a). Doc. [314]. In response, the Government pointed to no authority nor presented any meaningful argument on that point. *See* Doc. [315]. And authority the Court found on its own accord does not support the Government's position.[17]

---

[15] Acknowledging the "impracticability" of writs of execution to levy financial accounts, the Government explained the current practice is instead to issue writs of garnishment pursuant to 28 U.S.C. § 3205. Doc. [290] at 8 n.2. Nonetheless, the Government requests that the Court modify the sale terms of the 2003 Writ of Execution pursuant to the FDCPA. *See* Doc. [290] at 7–8; Doc. [315] at 7–8.

[16] There are no Eighth Circuit cases that directly address this issue.

[17] What constitutes "a proceeding in court" turns on the "nature, function, and effect" of the action under the relevant local law. *United States v. Silverman*, 621 F.2d 961, 964 (9th Cir. 1980) (citing *United States v. Saxe*, 261 F.2d 316, 319 (1st Cir. 1958)). The nature and posture of a writ of execution issued in federal court is illustrative here. "Execution" is an administrative process—after a Court renders a judgment in a case, a clerk of the court issues the writ which authorizes the USMS to seize property of the judgment debtor. Simply put, "execution" is a remedy afforded by law to enforce a final judgment the Court has already rendered. *United States v. Duran*, 701 F.3d 912, 915 (11th Cir. 2012) ("The Act provides the United States several remedies to satisfy a judgment, one of which is to obtain a writ of execution."); Fed. R. Civ. P. 69 ("A money judgment is enforced by a writ of execution."). On the other hand, a "proceeding" is "[t]he regular and orderly progression of a lawsuit, including all acts and events between

To support the application of Section 6502(a) here, the Government points to *United States v. Pegg*. In *Pegg*, the court held the Government's filing of a collection action eight days before the MVRA's twenty-year liability period expired prevented the restitution from expiring and allowed the Government to proceed under Section 6502(a). *Pegg*, 2016 WL 5234616, at *2. But *Pegg* is distinguishable from the case at bar. There, the "proceeding in court" was the filing of the action, which occurred eight days before the defendant's liability expired under Section 3613(c). Here, the Government filed their action in 2022. Thus, under *Pegg*, the Government would have no recourse under Section 6502(a) because it began "a proceeding in court" over a year *after* expiration of liability, which therefore was not "timely."

In conclusion, while Section 6502(a) may extend the Government's ability to collect restitution ordered under the MVRA beyond the twenty-year liability period, the Government has failed to show that a writ of execution filed within the statutory period is a "proceeding in court" as necessary to avail itself of Section 6502(a)'s tolling procedures. Thus, the Government cannot extend the period to collect restitution ordered under the MVRA here.

---

the time of commencement and the entry of *judgment*." Black's Law Dictionary (11th ed. 2019) (emphasis added). As just mentioned, a writ of execution, in contrast, is a manner to *enforce* a *judgment*. In other words, a "proceeding" is necessary for the issuance of a writ of execution and the writ of execution is only issued upon the conclusion of a "proceeding" (e.g.: final judgment). The Government's theory essentially puts the cart before the horse. Because the "nature, function, and effect" of a writ of execution is not similar to a "proceeding," and because the Government presents no argument to the contrary, the Court concludes that obtaining a writ of execution in federal court is not characterized as "a proceeding in court" for purposes of Section 6502(a). Established case law interpreting "proceeding in court," as used in Section 6502(a), requires the same conclusion. *See In the Matter of Est. of Jerry Wayne Young, Sr.*, 1:09-cv-814-LG-RHW, 2010 WL 1427584, at *2–4 (S.D. Miss. Apr. 8, 2010) (discussing the many courts that conclude actions constitute "proceedings in court" when they are similar to the filing of a lawsuit and concluding the same); *United States v. Saxe*, 261 F.2d 316, 320 (1st Cir. 1958) (finding no "proceeding in court" because the filing merely extends the time for service of process in an action already commenced against the estate); *Emigrant Sav. Bank v. Parker*, 379 N.Y.S.2d 216, 217 (N.Y. Sup. Ct. 1975) (holding action is a "proceeding in court" within the meaning of Section 6502 where it is a process "to start the case on a course of judicial handling which may lead to final judgment" and "an appropriate vehicle to effect the collection of claims"); *Silverman*, 621 F.2d at 965 (finding no "proceeding in court" because the filing of a lawsuit in California state court, not the filing of a claim against a probate estate, is what provides the terminal date of the statute of limitations).

C. **Restitution under the VWPA**.

Defendant's restitution liability for Count II is governed by the VWPA. Liability under the VWPA begins at the "entry of judgment" and "continues until the liability is satisfied, remitted, or set aside, or until it becomes *unenforceable*." 18 U.S.C. § 3613(a) (1994) (emphasis added). A lien becomes "unenforceable" twenty years after entry of judgment or upon the death of the defendant. *Id.* § 3613(b). Here, as already discussed by the Court, the entry of judgment was January 29, 1999. As such, Defendant's liability to pay restitution for Count II expired on January 29, 2019—twenty years after entry of judgment. *Id.* § 3613(b) (1994)); *see, e.g.*, *Norwood*, 49 F.4th at 209 (holding the defendant's restitution liability under the VWPA expired and became unenforceable on May 30, 2017—twenty years after his judgment on May 30, 1997).

Moreover, nothing in the VWPA, unlike the MVRA, extends payment, collection, or liability beyond this date.[18] In the context of the VWPA, as opposed to the MVRA, circuit courts expressly rejected extending the Government's period of collection once a defendant's liability terminated, placing much emphasis on the fact that the VWPA, unlike the MVRA, "did not provide for enforcement of restitution orders via the mechanism for enforcing tax liens." *Norwood*, 49 F.4th at 212 ("The MVRA amended § 3613 to provide for additional enforcement mechanisms, including § 6502(a). But that mechanism would not have been available to the Government under the VWPA version of § 3613(b)."); *see also Delano*, 981 F.3d at 1137 (holding the MVRA does

---

[18] The Court notes the Government's main argument that the Court must grant the Application because Defendant explicitly agreed not to contest liquidation of his accounts at Fidelity in his signed 2003 plea agreement related to his supervised release revocation. *See* Doc. [290] at 6–7; Doc. [311] at 2–3; Doc. [315] at 1–2. But a plea agreement has no bearing on the Court's authority to order liquidation of an account for restitution. *United States v. Gordon*, 480 F.3d 1205, 1210 (10th Cir. 2007) ("Courts have no inherent power to order restitution; they may only do so as authorized by statute."); *United States v. Delano*, 981 F.3d 1136, 1139 (10th Cir. 2020) ("There is no statutory authority, however, to extend the period in which the government can collect the unpaid balance of the restitution"); *see also* Doc. [279] at 1 (the 2003 plea agreement states the parties understand "that the Court is neither a party to nor bound by these agreements and recommendations"). As explained in this Memorandum and Order, the applicable statutory authority here—the VWPA and the MVRA—does not authorize the Court to extend restitution liability here.

not apply retroactively, such that the original judgment in 1993 under the VWPA expired and the VWPA contains "no statutory authority [] to extend the period in which the government can collect the unpaid balance"). Notably, even if the VWPA, like the MVRA,[19] treated enforcement of restitution orders akin to tax liens, Section 6502 would still *not* extend the Government's ability to collect here. As Section 6502(a) states, even if the Government tolls a lien by commencing a timely collection action, "that lien will still expire when 'the liability for the tax . . . becomes *unenforceable*.'" *Norwood*, 49 F.4th at 213 (quoting 26 U.S.C. § 6502(a)). Under the VWPA's version of Section 3613, a restitution lien "becomes unenforceable" after twenty years.[20] 18 U.S.C. § 3613(a)–(b) (1994)); *cf. Norwood*, 49 F.4th at 214 (stating the VWPA "could not be more explicit that no further action is authorized after its liability period expires: the lien becomes 'unenforceable'") (quoting 18 U.S.C. § 3613(b) (1994)). Because restitution ordered under the VWPA (Count II) here became unenforceable in 2019, Section 6502 could not extend liability beyond that date nor provide the Government recourse in 2022.

### Conclusion

Defendant's restitution liability is subject to both the VWPA's and the MVRA's liability period. The Court holds that Defendant's obligation to pay restitution ordered under the VWPA is unenforceable. 18 U.S.C. § 3613(b) (1994)). Similarly, the Court holds that Defendant's obligation to pay restitution ordered under the MVRA expired and the Government cannot avail itself of any statutory authority to extend the period in which it can collect the unpaid balance of

---

[19] Even if the Court found Section 6502(a) applied to extend the Government's collection of restitution ordered under the MVRA (Counts I and III), the Court's conclusion would not change. The Plea Agreement states that restitution paid during the required period "will be initially applie[d] to the mandatory restitution and remainder to discretionary restitution in the event [restitution] is ordered by the Court." Doc. [46] at 8. Thus, any restitution that Defendant has *already paid* went towards satisfying the restitution for Counts I and III. As such, the record is unclear as to how much, if any, restitution remains outstanding for Counts I and III.

[20] This stands in stark contrast to the MVRA, where a lien is *never* rendered "unenforceable" but simply describes when a defendant's liability terminates.

restitution from Defendant's Fidelity account.  18 U.S.C. § 3613(a)–(f) (1999).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff the United States of America's Application for Order Permitting Liquidation of Funds Pursuant to Writ of Execution, Doc. [290], is **DENIED**.

Dated this 1st day of December, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE